UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GEORGE MILLER, and | ) | |
| PATRICIA HULL individually and on be- | ) | |
| half of all others similarly situated | ) | |
|   nka PATRICIA MILLER, | ) | |
| | ) | |
|       Plaintiffs, | ) | |
| | ) | |
|       v. | ) | No. 1:19-cv-01353-JRS-DLP |
| | ) | |
| TATE & KIRLIN ASSOCIATES, INC., a | ) | |
| Pennsylvania corporation, | ) | |
| CACH, LLC, a Colorado limited liability | ) | |
| company, and | ) | |
| RESURGENT CAPITAL SERVICES, L.P., | ) | |
| a Delaware limited partnership, | ) | |
| | ) | |
|       Defendants. | ) | |

**Order Granting Motion to Compel Arbitration (ECF No. 42) and Motion to Stay Merits and Class Discovery (ECF No. 44)**

Plaintiffs George Miller and Patricia Hull, n/k/a Miller entered into a loan agree-

ment with Springleaf Financial Services ("Springleaf") on June 23, 2014. The Millers

were unable to re-pay the loan and it went into default. The Miller's last payment

was made on August 15, 2014. On February 24, 2016, Defendant CACH, LLC

("CACH") acquired the Miller's account from Springleaf. At the time, CACH's parent

company was Square Two Financial ("Square Two"). Square Two filed for bankruptcy

on March 3, 2017, and Defendant Resurgent Capital Services, L.P. ("Resurgent")

bought CACH. CACH and its new parent company, Resurgent, then sent the Miller's

debt to Tate & Kirlin Associates, Inc. ("T&K") for collection. T&K sent each of the

Millers a letter on December 5 and December 6, 2018. The letters listed the following creditors:

> Original Creditor: SPRINGLEAF FINANCIAL SERV
> Creditor: CACH LLC
> Previous Creditor: SPRINGLEAF FINANCE INC.

The Millers complain that the letters failed to adequately state the name of the current creditor to whom the debt was owed, in violation of § 1692g(a)(2) of the Fair Debt Collection Practices Act ("FDCPA"). The Millers filed suit against Defendants on behalf of themselves and all others similarly situated. Defendants now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (ECF Nos. 26 & 31), to compel arbitration (ECF No. 42), and to stay merits and class discovery (ECF No. 44).

Because Defendants' Joint Motion to Compel Arbitration and Joint Motion to Stay Merits and Class Discovery are dispositive, the Court addresses them first, in turn. As an initial matter, the Millers argue that Defendants have waived their right to arbitrate because they did not move to compel arbitration until after filing motions to dismiss. "A contractual right to arbitrate may be waived expressly or implicitly, and a party that chooses a judicial forum for the resolution of a dispute is presumed to have waived its right to arbitrate." *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) (citing *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 757 (7th Cir. 2002)). In addressing waiver, Courts assess whether "considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.*,

660 F.3d 988, 994 (7th Cir. 2011). Although several factors are relevant to the analysis, diligence weighs heavily in the decision—did "the party seeking arbitration . . . do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?" *Sharif*, 376 F.3d at 726 (quoting *Ernst & Young*, 304 F.3d at 757).

Considering this standard, Defendants did not waive their right to arbitrate. The Millers filed suit on April 3, 2019. Defendants CACH and Resurgent filed their Motion to Dismiss (ECF No. 26) on May 28, 2019, and Defendant T&K filed its Motion to Dismiss (ECF No. 31) on June 11, 2019. On July 24, 2019, before this Court ruled on the motions to dismiss, before a trial date was set, and before any discovery had been conducted, the Defendants jointly moved to compel arbitration. (ECF No. 42.) The Seventh Circuit has explicitly held that "simply moving to dismiss a case does not waive one's right to arbitrate." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008); *see also Sharif*, 376 F.3d at 726-27. The cases the Millers cite in support of their argument are distinguishable in that moving to dismiss was not the only action taken by the party against whom the waiver was to be enforced. *See Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 500 (7th Cir. 2018) (finding that defendant's actions in not moving to compel arbitration until it had lost its motion to dismiss, thirteen months after the suit was filed, and five months after it privately demanded plaintiff arbitrate her claim was inconsistent with an intent to arbitrate); *Cabintree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 389 (7th Cir. 1995) (finding a waiver occurred when the defendant removed the case from state

to federal court, engaged in discovery that required plaintiff to produce almost two thousand documents, and then moved to compel arbitration nine months after the suit began and five months before trial); *St. Mary's Med. Ctr. v. Disco Alum. Prods.*, 969 F.2d 585, 587 (7th Cir. 1992) (finding defendant had waived arbitration by moving to compel ten months after the suit was filed, a trial date had been set, it had participated in extensive discovery, and after it lost its motion to dismiss).

Rather, here, Defendants asserted their intent to resolve the dispute in arbitration and not litigation. Other than simply moving to dismiss, Defendants did not participate in any pretrial activities prior to invoking the arbitration clause, nor did Defendants unreasonably delay their arbitration demand. Absent any other action, moving to dismiss alone did not amount to implicit waiver of its right to arbitrate. *See, e.g.*, *Halim*, 516 F.3d at 562 (defendant did not waive arbitration by removing case to federal court and, thirty days later, before any other pleadings were filed, moving to dismiss the case by invoking the arbitration clause); *Sharif*, 376 F.3d at 726-27 (defendant who filed motions to dismiss and did not move to compel arbitration until eighteen months after suit began did not waive arbitration, as defendant did not remove the case to federal court, there was no trial date set, and no discovery had taken place.)

Having shown its intent to arbitrate, Defendants now must prove that the following exists: "(1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2005). The

Millers do not dispute that their claims fall within the scope of the arbitration agreement they originally signed nor that they refuse to arbitrate. Therefore, the remaining issue is whether that originally signed agreement to arbitrate is extant in this case.

Defendants submit a Loan Agreement and Disclosure Statement (the "Loan Agreement") (Exhibit 3, ECF No. 43-1 at 15-21), between the Millers and Springleaf Financial, signed by the Millers, which includes an Arbitration Agreement and Waiver of Jury Trial. Defendants also submit an Assignment and Bill of Sale (Exhibit 1, ECF No. 43-1 at 6-7) and a Sale File (Exhibit 2, ECF No. 43-1 at 8-14) showing that on February 24, 2016, Springleaf assigned a portfolio of accounts to CACH, including the Miller's account. Defendants argue that the Loan Agreement is a self-authenticating writing. *See* Federal Rule of Evidence 902(9) ("The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted: . . . Commercial paper, a signature on it, and related documents, to the extent allowed by general commercial law.").

The Millers, however, contend that the Loan Agreement is not self-authenticating because "Defendants submit no evidence from the original creditor [(Springleaf)] attesting as to whether this alleged agreement was the only agreement the Millers allegedly assented to, and whether it was superseded by a future agreement." But "the party offering the evidence is not required 'to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be.'" *Boim v. Quranic Literacy Inst.*, 340 F. Supp. 2d 885, 916 (N.D. Ill. 2004)

(quoting *United States v. Pluta* 176 F.3d 43, 49 (2d Cir. 1999)). Courts have consistently held that loan agreements and similar bank documents are self-authenticating under Rule 902(9). *See, e.g., Boim v. Quranic Literacy Inst.*, 340 F. Supp. 2d 885, 916–17 (N.D. Ill. 2004) (checks); *Ryan v. State*, No. 91 C 3725, 1999 WL 59982, at *3 (N.D. Ill. Feb. 3, 1999), *aff'd sub nom. Ill. ex rel. Ryan v. Brown*, 227 F.3d 1042 (7th Cir. 2000) (promissory notes); *Ament v. Townsend,* No. 98 C 1918, 1998 WL 299806, at *4 (N.D. Ill. May 29, 1998) (checks and invoices from banks); *Edward G. Bashian & Sons, Inc. v. Am. Nat'l. Bank & Tr. Co.,* No. 96 C 6021, 1997 WL 337434, at *7 (N.D. Ill. June 16, 1997) (letters of credit). The Loan Agreement, which is signed by the Millers, is properly authenticated under Rule 902(9) as a commercial paper or related document.

The Millers next claim that the Loan Agreement is inadmissible hearsay and cannot qualify as a business record because it "has not been maintained by one single system through its alleged existence." The Millers rely on Indiana Rule of Evidence 803(6), but in a federal court proceeding, the Federal Rules of Evidence must be applied. *See Schrott v. Bristol-Meyers Squibb Co.*, 403 F.3d 940, 943 (7th Cir. 2005). Federal Rule of Evidence 803(6) provides that documents are not excluded by the rule against hearsay where they constitute:

> A record of an act, event, condition, opinion, or diagnosis if . . . (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show

that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Defendants have submitted an affidavit from Anne Hetherneck, paralegal for Resurgent and custodian of records for CACH, stating that the Loan Agreement, the Assignment and Bill of Sale, and the Sale File were created at or near the time of the acts that they intend to convey by a person with knowledge and a business duty to report, and were maintained in the regular course and scope of the business of CACH. (Exhibit A, ECF No. 43-1 at 2-3). Hetherneck further states that CACH's regular business practice is to "(1) receive the seller's business records pertaining to the account; (2) fully integrate those business records into its own business records; and (3) rely on those records in its ordinary course of business." (*Id.* at 3.)

The Seventh Circuit has not ruled on the admissibility of third-party documents under the business records exception in this context, but several other courts have held that the custodian of records for the company relying upon another company's business records as part of a business transaction can authenticate those records as part of its own business records. *See, e.g.*, *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1344 (Fed. Cir. 1999) (holding that Rule 803(6) does not require first-hand knowledge of the original preparation of the document when "an organization incorporated the records of another entity into its own, relied upon those records in its day-to-day operations, and where there are other strong indicia of reliability"); *United States v. Childs*, 5 F.3d 1328, 1334 (9th Cir. 1993) ("A witness does not have to be the custodian of documents offered into evidence to establish Rule 803(6)'s foundational requirements . . . [as long as the witness is] familiar with the contents and

preparation of the exhibits in question."); *Cox v. CA Holding Inc.*, No. 1:13-CV-01754-JMS, 2015 WL 631393, at *9 (S.D. Ind. Feb. 13, 2015) (finding similar loan documents from CACH admissible under Rule 803(6) where CACH's custodian of records testified that she had knowledge of CACH's recordkeeping and that the records had been incorporated into the business records of CACH); *Cage v. Cach, LLC*, No. C13-01741RSL, 2014 WL 2170431, at *2 (W.D. Wash. May 22, 2014) ("Although some of the records were originally created by businesses other than CACH, 'records a business receives from others are admissible under Federal Rule of Evidence 803(6) when those records are kept in the regular course of business, relied upon by that business, and where that business has a substantial interest in the accuracy of the records.'") (quoting *MRT Constr. Inc. v. Hardrives*, 158 F.3d 478, 483 (9th Cir. 1998)).

The Court finds that Hetherneck's affidavit is sufficient to establish the loan documents as business records. Hetherneck asserts that she is a records custodian of CACH, that she is familiar with CACH's recordkeeping systems, that she has reviewed CACH's business records relating to these transactions, and that the records represented in Exhibits 1-3 were created from information transmitted by a person with knowledge near the time of the event and kept in CACH's regular course of business. (Exhibit A, ECF No. 43-1 at 2-3). The Millers provide no specific reason to doubt the trustworthiness of the records, other than the fact that they were adopted by another business. Conversely, Hetherneck confirms that the documents originally created by other businesses "have been incorporated into the business records of CACH and are relied upon by CACH in conducting its business." (*Id.* at 3.)

Under the Federal Arbitration Act, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Further, if an action is ordered to arbitration, the district court must stay the proceedings until such arbitration has occurred. 9 U.S.C. § 3; *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002).

Therefore, for the reasons stated above, Defendants' Rule 12(b)(6) Motion to Dismiss & Brief in Support (ECF No. 26) is **denied as moot**, Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 31) is **denied as moot**, Defendants' Joint Motion to Compel Arbitration (ECF No. 42) is **granted**, and Defendants' Joint Motion to Stay Merits & Class Discovery (ECF No. 44) is **granted**. All deadlines are **vacated**. The parties are directed to notify the Court within thirty (30) days of the completion of **arbitration**.

**SO ORDERED.**

Date:  3/4/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution via CM/ECF to all parties of record.